1  Patrick J. Folan (CA Bar No. 125340)
   Steven W. Brennan (CA Bar No. 110256)
2  ST. JOHN, WALLACE, BRENNAN & FOLAN LLP
   2377 Crenshaw Blvd., Suite 151
3  Torrance, California 90501-3318
   Telephone: (310) 792-1075
4  Facsimile: (310) 792-0635
   E-mail: pjfolan@swbf.net; swbrennan@swbf.net
5

6  Attorneys for Plaintiff
   Morgan Stanley Smith Barney LLC
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 | Morgan Stanley Smith Barney LLC, ) | CASE No.
12 |                     Plaintiff,     ) | **COMPLAINT:**
13 |         vs.                        ) | 1. **MISAPPROPRIATION OF TRADE SECRETS;**
14 |                                    ) | 2. **CONVERSION;**
15 | Brent Jacobs,                      ) | 3. **BREACH OF DUTY OF LOYALTY;**
16 |                     Defendant.     ) | 4. **UNFAIR COMPETITION**
17 |                                    ) | Date: May 24, 2019
   |                                      | Time: (to be determined)
18 |                                      | Ctrm: (to be determined)

19       1.    Plaintiff Morgan Stanley Smith Barney LLC (hereinafter "Morgan

20 Stanley" or "Plaintiff"), hereby brings the following Complaint for injunctive relief

21 against Brent Jacobs (hereinafter "Defendant") for (1) misappropriation of trade

22

23 secrets; (2) conversion; (3) breach of duty of loyalty; and (4) unfair competition.

24 Morgan Stanley further seeks an Order compelling arbitration before a Financial

25
   Industry Regulatory Authority, Inc. ("FINRA") arbitration panel pursuant to Rules
26

27 13200 and 13804 of the FINRA Code of Arbitration Procedure.

28

2. Morgan Stanley seeks a temporary restraining order and a preliminary injunction to enforce Defendant's legal obligations based on his misappropriation of trade secrets, conversion, breach of the duty of loyalty, and unfair competition.

3. Unlike other cases involving departing financial advisors, Defendant in this case took original client documents containing financial and/or other highly confidential information pertaining to Morgan Stanley's clients. Morgan Stanley also no longer has access to much of this information and, as a result, is handicapped in trying to retain the business of and service these clients.

4. Morgan Stanley is filing, simultaneously with the filing of this action, an arbitration against the Defendant before FINRA. FINRA's Code of Arbitration Procedure Rule 13804 requires parties seeking interim injunctive relief to do so from a court of competent jurisdiction and, upon entry of an order by a court, FINRA will schedule an expedited hearing on the request for a permanent injunction within fifteen days.

## I. PARTIES

5. Morgan Stanley is a broker-dealer and a member of FINRA.

6. Defendant was formerly employed by Morgan Stanley as a financial advisor in its Oxnard, California office.

/ / /

/ / /

## II. JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

8. Plaintiff is a limited liability company incorporated in Delaware with its principal place of business in the State of New York. Morgan Stanley's sole member is Morgan Stanley Domestic Holdings, Inc. ("MSDHI"), a corporation wholly-owned by Morgan Stanley Capital Management, LLC ("MSCM"), a limited liability company whose sole member is parent Morgan Stanley. Plaintiff in this matter, as well as MSDHI, MSCM, and parent Morgan Stanley, all are incorporated in Delaware with its principal place of business in New York.

9. Defendant is a citizen of the State of California, residing in Ojai, California which is within this judicial district.

10. Venue is proper in this Court under 28 U.S.C. § 1391 as Defendant resides in this judicial district and the conduct complained of also occurred in this judicial district.

## III. FACTS COMMON TO ALL COUNTS

11. Morgan Stanley is engaged in the business of, *inter alia*, providing investment services to the public at large.

12. On an annual basis, Defendant agreed to abide by Morgan Stanley's Code of Conduct. (Relevant excerpts of the 2019 Code of Conduct in effect at the time of Defendant's resignation are attached hereto as Exhibit "A.") The Code of Conduct defines "confidential information" as information "that is not generally known to the public", including the "identity of our clients . . ." *Id.* at 15. The Code of Conduct further states, "You must protect all confidential information, regardless of its form or format" and "only access confidential information that you need and are authorized to see. . . ." *Id.* In addition, the Code of Conduct states: "Your obligation to protect our confidential information continues even after your employment at Morgan Stanley ends." *Id.*

13. Morgan Stanley takes numerous other measures to protect its trade secret information. As set forth in the Declaration of Bradley Dykes, these measures include limiting employee access to client information on a "need to know" basis. Furthermore, financial advisors only have access to the information on clients they service. The office also contains several locked boxes where confidential information that no longer is needed can be stored and later shredded.

14. Defendant (and his assistant Kimberly Smith) resigned from Morgan Stanley on May 17, 2019, without any advance notice, to join a competing firm, Wells Fargo Advisors, LLC ("Wells Fargo"), in a nearby office located in the same building as Morgan Stanley and only two floors away. Based on prior deals paid

by Wells Fargo and other securities firms, Morgan Stanley believes Defendant received financial inducements totaling over $2 million, including an upfront forgivable loan and asset and/or production bonuses.

15. In February 2019, Morgan Stanley's Oxnard office was undergoing renovations. At around the same time, in order to economize space, Morgan Stanley encouraged financial advisors to digitize the contents of hard copy client files. Defendant, however, resisted these efforts to digitize his hard copy files and maintained most, if not all, of his client files in hard copy.

16. In connection with the renovations that took place in February 2019, Defendant apparently no longer had sufficient room in his new credenza to store hard copy client files, so he moved them to two large file drawers right outside his office in the work area of Ms. Smith.

17. Prior to Defendant's and Ms. Smith's resignations and during the week of May 13, 2019, Morgan Stanley employee Jo Trujeque had a conversation with Ms. Smith about an expense issue, which took place in her work space located just outside of Defendant's office. During her conversation with Ms. Smith, Defendant, from his office and out of the blue, stated to Ms. Trujeque words to the effect, "look at my drawers, no files." It appears that Defendant was referring to the branch office's desire that hard copy files should be stored electronically. Immediately upon Defendant's remarks, however, Ms. Smith said

words to the effect that "yes, but we have all of these to get to." At the same time she made this statement, Ms. Smith gestured to the two large cabinets in her work area containing hard copy client files.

18. Upon Defendant's and Ms. Smith's resignations, which occurred shortly after the conversation detailed in the foregoing paragraph, Ms. Trujeque inspected both Defendant's office and Ms. Smith's work space. No hard copy files were located in Defendant's office, and the numerous file folders contained in the two drawers in Ms. Smith's work space were predominantly empty.

19. As set forth fully in the Declaration of Alisa Stearns, upon Defendant's resignation from Morgan Stanley on Friday, May 17, 2019, Morgan Stanley employee Alisa Stearns spoke with Ms. Smith to address the client files that appeared to be missing from her work area. Ms. Smith denied that she or Defendant took any files and claimed that the contents of the files had been scanned into the Morgan Stanley computer system.

20. After speaking with Ms. Smith, however, Ms. Stearns conducted searches in the computer system of several clients whose files were missing to see whether she could discern whether any client materials had been scanned. She found nothing. She also conducted searches in the computer system of 10 of the larger clients serviced by Defendant, and she further found no evidence of scanned materials from any hard copy files. Ms. Stearns also conducted searches of

Defendant and Ms. Smith in Morgan Stanley's "work flow" application to see if she could further discern whether they scanned any contents of client files during the time period February 1, 2019 through the date of their resignations. Ms. Stearns likewise could find no evidence of scanned files through these searches.

21. The information contained in these files would have been useful to Morgan Stanley in trying to retain its clients and also to serve them following Defendant's departure. In fact, Morgan Stanley looked for documents in these client files for this very purpose. A sole copy of a number of the documents, such as notes of communications with clients, also were kept in these files. Now that the files are gone, Morgan Stanley has no access to these documents and information, which is very detrimental to the firm.

22. Morgan Stanley believes, and is extremely concerned, that Defendant retained files containing very sensitive and confidential information of Morgan Stanley clients, including, but not limited to, client account information. Morgan Stanley believes that Defendant is misusing this information on behalf of a competitor, including for the improper purpose of soliciting Morgan Stanley clients.

23. Not only has Defendant appeared to have retained the trade secret and proprietary information of Morgan Stanley, but Morgan Stanley has also learned that Defendant, in the week prior to his departure and at the expense of Morgan

Stanley, sent gifts in the form of flowers to 38 clients. It is clear that Defendant sent these gifts to Morgan Stanley's clients in anticipation of his move to Wells Fargo. In further anticipation of his move to Wells Fargo, Defendant also met with a very large client only two days before resigning and persuaded her to liquidate an account that was not transferable to Wells Fargo. This transaction resulted in a sizable capital gains tax for the client but made it far easier for Defendant to move these assets to Wells Fargo. The client, in turn, then submitted instructions to move her assets to Wells Fargo, including the assets which previously had not been transferable.

## COUNT I

## INJUCTIVE RELIEVE

24. The allegations of Paragraphs through 20 are incorporated by reference herein with the same force and effect as if set forth in full below.

25. By virtue of the foregoing, Morgan Stanley has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of a temporary restraining order and preliminary injunction against Defendant.

26. Unless Defendant is immediately enjoined from violating his legal obligations, Morgan Stanley will be irreparably harmed by:

    (a) Disclosure of trade secrets and confidential and proprietary

client information,

(b) loss of confidentiality of trade secret and confidential and proprietary client records and the attendant loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

(c) Loss of clients, damage to office stability, and a threat to the enforcement of confidentiality obligations; and

(d) Potential future economic loss, which is presently unascertainable and incalculable.

27. Morgan Stanley has no adequate remedy at law.

## COUNT II

## MISAPPROPRIATION OF TRADE SECRETS

28. The allegations of Paragraphs 1 through 27 are incorporated herein by reference with the same force and effect as if set forth in full below.

29. Morgan Stanley developed and owns trade secrets as defined by the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code Section 3426-3426.11. The information in in the above-described missing files derives independent economic value, actual or potential, from not being generally known to the public or other persons who can obtain economic value from its disclosure or use. Morgan Stanley takes reasonable efforts to protect and maintain the secrecy of its trade secrets including the above-described missing files.

30. As such the missing files are trade secrets entitled to protection under the CUTSA.

31. Defendant has misappropriated Morgan Stanley's trade secret information.

32. As a consequence of the foregoing, Morgan Stanley has suffered and will continue to suffer irreparable harm and loss and unless and until enjoined by order of this Court, will cause great and irreparable harm to Morgan Stanley.

## COUNT III

## CONVERSION

33. The allegations of Paragraphs 1 through 32 are incorporated herein by reference with the same force and effect as if set forth in full below.

34. Morgan Stanley has an ownership and/or right to possession of the information and documents in its client files including the above-described missing files.

35. Defendant wrongfully converted Morgan Stanley's property by removing and retaining and exercising dominion and control over property belonging to Morgan Stanley without permission or authorization, all for his own personal gain.

36. As a consequence of the foregoing, Morgan Stanley has suffered and will continue to suffer irreparable harm and loss.

## COUNT IV

## BREACH OF DUTY OF LOYALTY

37. The allegations of Paragraphs 1 through 36 are incorporated herein by reference with the same force and effect as if set forth in full below.

38. During his employment Defendant owed Morgan Stanley a duty of loyalty to act solely and exclusively in Morgan Stanley's best interest and to refrain from engaging in conduct contrary to Morgan Stanley's legitimate business interests. Defendant has violated his duty of loyalty to Morgan Stanley by various acts including the removal of client files and misappropriating Morgan Stanley's confidential and trade secret information, sending gifts to clients at a point in time he knows he will be joining a competitor, and persuading one or more clients to make investment decisions that will facilitate the transfer of their assets to Wells Fargo, all of which acts are contrary to and inimical to the interests of Morgan Stanley.

39. As a consequence of the foregoing, Morgan Stanley has suffered and will continue to suffer irreparable harm and loss.

## COUNT V

## UNFAIR COMPETITION

40. The allegations of Paragraphs 1 through 39 are incorporated herein by reference with the same force and effect as if set forth in full below.

41. Upon information and belief, the conduct of Defendant as described above constitutes common law unfair competition and unfair completion in violation of California Business and Professions Code Section 17200 *et. seq.* which prohibits unfair, unlawful or fraudulent business practices.

42. In further unfair competition, Defendant also falsely told at least one Morgan Stanley client that he left because he because Morgan Stanley wanted him to do things that were "unethical." Multiple clients also have advised Morgan Stanley management that Defendant falsely claimed that another Financial Advisor in the office will be "retiring" at the end this year so as to delude clients into believing they will suffer disruption if they stay at Morgan Stanley.

43. As a consequence of the foregoing, Morgan Stanley has suffered and will continue to suffer irreparable harm and loss.

## **PRAYER FOR RELIEF**

WHEREFORE, for the reasons set forth above, Morgan Stanley respectfully requests that the Court:

(a) Enter a Temporary Restraining Order and/or Preliminary Injunction immediately, enjoining Defendant, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of Wells Fargo, from:

(i) Using, disclosing, or transmitting for any purpose

(including for the purpose of soliciting Morgan Stanley clients), any records, documents, or information relating in any way to the clients, business or marketing strategies, or business operations of Morgan Stanley, whether in original, copied, computerized, handwritten, or any other form (hereafter the "Records and Information");

(ii) Retaining, in any form, including without limitation original, copied, computerized, handwritten or any other form, any Records and Information; and

(iii) Any other such acts as this Court deems appropriate for injunctive relief.

(b) Order Defendant, and anyone acting in concert or participation with him, including any agent, employee, officer or representative of Wells Fargo, to return to Morgan Stanley all Records and Information, whether in original, copied, computerized, handwritten or any other form, within twenty-four (24) hours of notice to Defendant or his counsel of the terms of the Court's Order. Notwithstanding the foregoing, if any Records and Information to be purged pursuant to this paragraph exist in electronic form (hereinafter Electronically Stored Information or "ESI,") such ESI shall immediately be preserved in a forensically sound manner prior to any purge or return, and Defendant's counsel shall coordinate with Plaintiff's counsel to arrange for return and purging of such

ESI within five days; and

        (c) Direct Morgan Stanley and Defendant, pursuant to the requirements of sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3-4, the parties are directed to proceed to an expedited arbitration hearing before a duly appointed panel of arbitrators pursuant to Rule 13804 of the FINRA Code of Arbitration Procedure.

Dated: May 24, 2019         ST. JOHN, WALLACE, BRENNAN & FOLAN LLP

/s/ Patrick J. Folan
PATRICK J. FOLAN
Attorneys for Plaintiff
Morgan Stanley Smith Barney LLC